UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UBS FINANCIAL SERVICES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> PLAYER TO BE NAMED LATER, LLC and SMOKEY JOE'S CAFÉ BROADWAY REVIVAL LLC, <br><br> Defendants. | Civil Case No.: <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiff UBS Financial Services Inc. ("UBS") hereby alleges as follows in support for its claim for relief against Defendants Player to Be Named Later LLC ("PTBNL"), and Smokey Joes Café Broadway Revival LLC ("SJC") (collectively, "Defendants").

**NATURE OF THE ACTION**

1. This is an action to enjoin the proceedings in a FINRA arbitration (the "FINRA Arbitration") initiated by Defendants in this district against UBS. In Defendants' FINRA Statement of Claim (the "Claim," Ex. A), Defendants allege that they entered into "Funding Agreements" for the production of Broadway shows with Forrest Capital Partners, Inc. ("FCP"), a corporation operated by Benjamin McConley, and Weathervane Productions, Inc. ("WPI"), a corporation operated by Jason Van Eman. The Funding Agreements allegedly provided that Defendants would send FCP/WPI funds for the ventures, the funds would be deposited in a UBS account and the funds could not be withdrawn without Defendants' authorization. FCP allegedly opened an account with UBS, PTBNL/SJC sent funds to that account and McConley withdrew those funds without the required permission of PTBNL/SJC, resulting in damages.

1

2. These claims are not arbitrable. Brokerage firms like UBS are required to be members of FINRA. A FINRA member may only be compelled to arbitrate a dispute if (i) the dispute is between a "*customer*" and a member *and* (ii) "[t]he dispute arises in connection with the *business activities* of the member [. . .]." FINRA Rule 12200 (emphasis added). Defendants do not satisfy these basic requirements and, accordingly, FINRA lacks jurisdiction over their claims.

3. First, Defendants were not "customers" of UBS. They did not have accounts with UBS and were not authorized to transact with respect to the FCP account or any other UBS accounts. Moreover, Defendants did not pay UBS fees for any goods or services that conceivably could form the basis of a customer relationship. The fact that Defendants were not "customers," by itself, makes their claim non-arbitrable.

4. In addition, Defendants' dispute does not arise in connection with UBS's "business activities." Rather, it arises from the alleged breach of an agreement between Defendants and FCP/WPI, to which UBS was a stranger.

5. The crux of Defendants' claims are that (i) UBS knew of the Funding Agreements that required that Defendants authorize withdrawals from the UBS account and (ii) UBS conducted insufficient due diligence in opening and maintaining FCP's account without discovering prior actions against McConley. Those allegations are false but even if they were true, FINRA would have no jurisdiction over these claims because Defendants are not "customers" and their claims do not relate to the business activities of a member firm. See Paine, Webber, Jackson & Curtis, Inc. v. Chase Manhattan Bank, N.A., 728 F.2d 577, 580 (2d Cir. 1984) ("any rule extending the arbitration provisions to controversies not arising out of exchange-related business would do significant injustice to the reasonable expectations of exchange members [. . . and] would require

every exchange member, at the insistence of a non-member, to submit to exchange arbitration every dispute it has with any entity in the world, no matter what the subject matter.").

6. A permanent injunction should be issued enjoining the FINRA Arbitration. Defendants are not customers and the dispute does not arise from UBS's business activities. Irreparable harm exists where, as here, a party is forced to arbitrate a dispute that is not arbitrable. FINRA arbitration rules provide only limited opportunities for pre-hearing dismissal of baseless cases like this one. For example, FINRA Rule 12504 discourages arbitration panels from deciding motions to dismiss on the merits until the parties have conducted discovery and claimants have presented their case-in-chief at the hearing. Accordingly, absent an injunction, UBS likely will spend a year or more defending a case over which FINRA has no jurisdiction.

7. UBS therefore requests that this Court enjoin Defendants from pursuing their claims in arbitration.

## THE PARTIES

8. Plaintiff UBS is a Delaware corporation with its principal place of business in Weehawken, New Jersey.

9. Defendant PTBNL is a corporation formed in the state of New York.

10. Defendant SJC is a corporation formed in the state of New York.

## JURISDICTION AND VENUE

11. This is an action for declaratory judgment pursuant to 28 U.S.C. 2201 and Federal Rule of Civil Procedure 57 and for injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

12. This Court has subject matter jurisdiction because the parties are diverse in citizenship and the amount in controversy exceeds $75,000. In the Claim, Defendants seek $3.5 million plus punitive damages, attorneys' fees and costs.

13. This Court has personal jurisdiction over Defendants. Defendants expressly requested that their FINRA Arbitration take place in New York – a request FINRA granted when it scheduled the FINRA Arbitration in New York, New York.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(a)(2) because a substantial part of the events giving rise to this action occurred within this judicial district, including that the FINRA arbitration that UBS seeks to enjoin has been set to take place in New York, New York at Defendants' request.

## FACTUAL BACKGROUND

15. The Claim describes two separate "but essentially identical" ventures between Defendants and non-parties FCP and WPI for the production of Broadway shows. (Ex. A at ¶24). Defendants allege that they entered into Funding Agreements that directed the creation of a "Master Account" at UBS and required a representative from SJC or PTBNL to authorize "all transactions concerning the Master Account." (Ex. A at ¶28). Defendants allege that this designation of UBS as the brokerage at which the Master Account would be maintained influenced their decision to enter into the Funding Agreements. (Ex. A at ¶27).

16. Defendants allegedly deposited $3.5 million into the UBS account pursuant to the Funding Agreements. (Ex. A at ¶29). McConley allegedly created false documentation showing that FCP had made a matching deposit at UBS. UBS allegedly permitted FCP to transfer Defendants' funds without their approval, as required by the Funding Agreements, resulting in their damages. Defendants allege, "upon information and belief," that UBS had received copies

of the Funding Agreements and was aware of the requirement that Defendants approve all transfers. (Ex. A at ¶26).

17. Defendants further allege that UBS failed to exercise "reasonable diligence" in opening and maintaining the FCP account, and in doing so violated FINRA Rules 2090 and 2010. (Ex. A at ¶¶50 – 69). FINRA Rule 2090 requires member firms to know and retain essential facts concerning each customer and the authority of persons acting on behalf of the customer. FINRA Rule 2010 requires that firms conduct business with high standards of commercial honor and maintain just and equitable principals of trade. Defendants allege that there had been various lawsuits against FCP and WPI and that UBS had a duty to detect these lawsuits and deny FCP's account opening application.

## The Claims are Not Subject to FINRA Arbitration

18. As a FINRA member, UBS has consented to arbitrate only a limited number of disputes, i.e., those that are between "a customer and" UBS **and** "arise[] in connection with the business activities of" UBS. FINRA Rule 12200. Defendants were not customers of UBS. In addition, neither their allegations regarding UBS's purported knowledge of the Funding Agreements nor the Firm's alleged obligations concerning the opening of a third party's account constitute a "business activity" of UBS within the meaning of FINRA Rule 12200.

19. Defendants do not satisfy *either* requirement of FINRA Rule 12200, *both* of which must be met for them to arbitrate their dispute before FINRA.

### *Defendants Were Not Customers Of UBS*

20. A "customer" under FINRA Rule 12200 is "one who, while not a broker or a dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." Citigroup Glob. Mkts. v. Abbar, 761 F.3d 268, 275 (2d Cir. 2014) (("[t]he 'ordinary

meaning' of the word 'customer' [. . .] is 'someone who buys goods or services'" and "[b]y agreeing to accept 'a fee for its services' or by selling securities to an entity, a FINRA member understands that it may be compelled to arbitrate if a dispute arises with that entity.").

21. Defendants did not have any accounts with UBS, they did not purchase any investments from UBS and they did not receive any "goods or services" from UBS. Indeed, during the relevant time period, Defendants were strangers to UBS and they only contacted UBS after the Firm began closing FCP's accounts and FCP had transferred the funds out of its account. Defendants' alleged *mistaken* belief concerning a purported account at UBS, founded upon misrepresentations made by McConley, does not make them "customers."

22. Because Defendants were not customers, for this reason alone, their claims are not arbitrable.

### *Defendants' Allegations Arise From A Dispute Between Defendants And FCP And Not UBS's Conduct As A Broker-Dealer*

23. In addition, Defendants' dispute is not arbitrable because the dispute does not relate to the "business activities" of UBS. Defendants' allegations concerning the Funding Agreements between FCP/WPI and Defendants and UBS's alleged failure to discover prior lawsuits against McConley or FCP do not satisfy this standard.

24. The term "business activities" is limited to the FINRA-regulated conduct that brokerage firms would reasonably expect to be subject to arbitration. See Valentine Capital Mgmt., Inc. v. Agahi, 174 Cal. App. 4th 606, 616 (2009) ("appropriate limit[s] on the concept of 'business activities'" protect "the reasonable expectations of the parties involved.") Neither agreements to which UBS was not a party nor UBS's client onboarding procedures are "exchange-related business," e.g., the purchase or sale of securities.

6

25. In addition, insofar as Defendants base their claims on alleged violations of FINRA Rules 2090 and 2010, such rules do not create a private right of action for customers of member firms, let alone non-customers like Defendants. See Klock v. Lehman Bros. Kuhn Loeb, Inc., 584 F. Supp. 210, 216-217 (S.D.N.Y. 1984) (no private right of action under NASD "know your customer" rule); Colman v. D. H. Blair & Co., 521 F. Supp. 646, 655 (S.D.N.Y. 1981) (no private right of action for NASD Rule requiring "high standards of commercial honor and just and equitable principles of trade" and NYSE Rule "which in relevant part requires members to learn all relevant facts regarding their customers") (internal citations omitted).

26. Because Defendants were not "customers" of UBS and their dispute did not arise from the "business activities" of UBS, their claims are not arbitrable.

### UBS Will Suffer Irreparable Harm if Claimants Are Not Enjoined

27. Where, as here, a party will be forced to arbitrate a non-arbitrable claim absent an injunction, it will suffer irreparable harm. Spear, Leeds & Kellogg v. Cent. Life Assurance Co., 879 F. Supp. 403, 404 (S.D.N.Y. 1995), rev'd on other grounds, 85 F.3d 21 (2d Cir. 1996) ("A party … will suffer *per se* irreparable harm if a court compels the party to submit to arbitration when it has not agreed to do so.");

28. Irreparable harm arises where a party is "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003).

29. Thus, if the FINRA Arbitration proceeds, UBS will suffer irreparable harm.

### Absent an Injunction There is No Adequate Remedy At Law

30. If UBS were forced to arbitrate a claim that it did not agree to arbitrate, it would lose its right to have Defendants' claims adjudicated in a court of law. UBS Sec. LLC v. Voegeli,

684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010), aff'd, 405 F. App'x 550 (2d Cir. 2011) ("[Plaintiff] would also lose its right to have defendants' claims adjudicated in a court of law, rather than in an arbitral forum to whose jurisdiction it has not consented. As such, there would be no adequate remedy at law if [Plaintiff] is forced to arbitrate defendants' claim in the FINRA proceeding.").

31. Thus, there would be no adequate remedy at law if UBS is forced to arbitrate Defendants' claims in the FINRA Arbitration.

## CLAIMS FOR RELIEF

### COUNT 1

### Declaratory Judgment

32. UBS alleges each and every prior allegation of this Complaint as if set forth fully herein.

33. UBS is compelled to seek relief from the Court because it is well-settled law that a court may decide whether a dispute against a FINRA member is subject to arbitration under FINRA rules, including under FINRA Rule 12200.

34. Defendants' claims are not subject to FINRA arbitration because Defendants are not customers of UBS and the dispute does not arise from UBS's business activities. See FINRA Rule 12200.

35. As a matter of law, unless Defendants are enjoined from pursuing their claims in the FINRA Arbitration, UBS will suffer irreparable harm irreparable harm because it will (i) be forced to arbitrate a dispute that is not subject to arbitration under FINRA rules; (ii) be forced to incur substantial time and expense defending itself in arbitration proceedings, or risk an adverse outcome in those proceedings, even though an arbitration award would be unenforceable; and (iii) lose its right to have Defendants' claims adjudicated in a court of law. Being forced to arbitrate a

dispute UBS has not agreed to arbitrate under FINRA rules constitutes irreparable harm as a matter of law.

36. Declaratory relief from this Court will resolve this controversy.

37. As alleged above, a real, substantial, and immediate controversy is presented regarding the rights, duties, and liabilities of the parties. Pursuant to 28 U.S.C. § 2201 et seq., and Rule 57 of the Federal Rules of Civil Procedure, UBS, accordingly, requests a declaratory judgment from the Court that Defendants' claims are not arbitrable and that Defendants must bring their claims, if at all, in court.

## COUNT 2

### Injunctive Relief

38. UBS alleges each and every prior allegation of this Complaint as if set forth fully herein.

39. Defendants have asserted claims for compensatory and punitive damages in the FINRA Arbitration. On information and belief, unless Defendants is enjoined, they will continue to pursue such claims.

40. As a matter of law, unless Defendants are enjoined from pursuing their claims in the FINRA Arbitration, UBS will suffer irreparable harm irreparable harm because it will (i) be forced to arbitrate a dispute that is not subject to arbitration under FINRA rules; (ii) be forced to incur substantial time and expense defending itself in arbitration proceedings, or risk an adverse outcome in those proceedings, even though an arbitration award would be unenforceable; and (iii) lose its right to have Defendants' claims adjudicated in a court of law.  Being forced to arbitrate a dispute UBS has not agreed to arbitrate under FINRA rules constitutes irreparable harm as a matter of law.

## PRAYER FOR RELIEF

WHEREFORE, UBS respectfully requests that this Court enter an order:

1. Declaring that (a) FINRA is not the appropriate forum for Defendants to pursue their claims and (b) FINRA has no jurisdiction to adjudicate the FINRA Arbitration;

2. Permanently enjoining Defendants from pursuing their claims against UBS in a FINRA Arbitration; and

3. Awarding UBS all other relief as may be just and proper, including attorneys' fees and costs.

DATED: May 22, 2018                    Respectfully submitted

                                       BRESSLER, AMERY & ROSS, P.C.

                                       By: _/s/ Andrew W. Sidman__
                                       Andrew W. Sidman, Esq.
                                       David G. Buffa, Esq. (*pro hac vice* application to be submitted)
                                       17 State Street
                                       New York, NY 10004
                                       Tel: (212) 425-9300; Fax: (212) 425-9337
                                       E-Mail: asidman@bressler.com
                                       E-Mail: dbuffa@bressler.com
                                       *Counsel for Plaintiff,*
                                       *UBS Financial Services, Inc.*